Mr. Chief Justice Alvey
delivered the opinion of - the Court:
This is an appeal from the Supreme Court of the District of Columbia, in the matter of an application for a mandamus to be directed to the Commissioner of Patents, requiring that official to hear and decide an appeal that was taken to him in an interference proceeding pending in the Patent Office, to which, proceeding the present appellant, Charles W. Staple-ton, is a party. The appeal that was taken to the Commissioner in person was heard and decided by the Assistant Commissioner of Patents, and the decision being adverse to the present appellant, he thereupon applied to the court below for the writ of mandamus to compel the Commissioner to hear and determine the appeal, upon the theory that the Assistant Commissioner was entirely without authority to act in the premises. The writ was refused, and from the order refusing the writ this appeal has been taken.
Upon the application to the court below a rule was made upon the Commissioner of Patents to show cause why the writ should not issue. To that rule the Commissioner answered, and the case was heard and considered upon the *577 petition and answer; and which hearing, as we have said, resulted in a denial of the writ.
The facts as disclosed by the petition and answer appear to be these: The present appellant, the relator in the court below, was and is a party to an interference proceeding pending in the Patent Office, in which the board of examiners in chief awarded him priority of invention. From that decision an appeal was taken by the adverse party to the Commissioner of Patents in person, in the form as directed by the statute. The case was regularly set for hearing, and, on the day fixed for the hearing, the parties and their attorneys being present, the Assistant Commissioner, having been duly assigned to the performance of the duty by the Commissioner of Patents, took up the appeal to the Commissioner, heard, and thereupon decided the same, and signed the order of reversal, and awarded priority of invention to the opponent of the present appellant. It is alleged as a fact and not disputed, that during the hearing of the appeal by the Assistant Commissioner, the Commissioner of Patents was present in his rooms -in the building, attending to the regular business of his office. That two days after the decision thus made, the present appellant filed in the Patent Office a'motion praying that the decision of the Assistant Commissioner be vacated and set aside, as being wholly without force or effect, the contention being that the Assistant Commissioner had no power or authority to act in the premises, and that his decision of the appeal was simply null and void; that the Commissioner of Patents had no warrant or authority under the law for assigning the Assistant Commissioner to the performance of such duty. That motion was overruled, and' thereupon the application was made for the mandamus.
Whether the Commissioner of Patents has authority, under the law, to assign to the Assistant Commissioner the performance of such duty as that of hearing and deciding an *578 appeal taken to the Commissioner in an interference proceeding, is the only question that need be decided on this appeal.
By the Constitution, Art. 1, Sec. 8, among the many powers delegated to Congress, is that “To promote the progress of science and useful arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.” This provision of the Constitution invests Congress with plenary power over the subject of patents, and, as a necessary incident thereto, over the proceedings by which a patent can be obtained; and also with full power to devise and provide for all such agencies as may be deemed necessary and proper, from time to time, for the execution of the various provisions of the acts of Congress upon the subject. Evans v. Eaton, 3 Wheat. 454; S. C. 7 Wheat. 356. To meet and provide for the exigencies of a growing and complicated administrative system for the examination of claims and the conflict of claims for patents, to inventors and discoverers, Congress has from time to time devised various systems and designated various agencies for the execution of the patent laws. A brief reference to these may serve to shed light upon the question now under consideration.
By the first of these acts of Congress, that of 1790 (1 Stat. at Large, 109), the application for the patent was required to be made to the Secretary of State, the Secretary of War, and the Attorney General, with power in any two of them to grant or refuse a patent. The patent was required to bear the teste of the President of the United States, and when made out or reduced to form, to be delivered to the Attorney General for examination, and if found to be in conformity to law, he was required to so certify the same. This act was of but short duration, being superseded by the act of 1793 (1 Stat. at Large, 323). By this latter act something more of a system was introduced. The application was required to be made to the Secretary of State alone, and when the *579 patent was made out it was required to be submitted to the Attorney General for his examination, and if found to be in conformity to law, that he should so certify. It was in this act that the' question of interfering applications was first provided for, by a method for its determination. By the 9th section of that act, it was provided that in case of interfering applications, they should be submitted to the arbitration of three persons, one of whom to be chosen by each of the applicants, and the third by the Secretary of State, and the decision or award of such arbitrators, subscribed by them, or any two of them, and delivered to the Secretary of State, was declared to be final, as far as respected the granting of the patent.
This provision of the act of 1793, as did the other principal provisions of that act, remained in force until the passage of the act of Juty 4, 1836 (16 Stat. at Large, Ch. 230), providing for the establishment and organization of the Patent Office, attached to the Department of State. By this act a Commissioner of Patents, as chief officer, was required to be appointed by the President, by and with the consent of the Senate, whose duty it was declared to be, under the direction of the Secretary of State, to superintend, .execute, and perform all such acts and things touching and respecting the granting and issuing of patents for new and useful discoveries, inventions and improvements, as were therein provided for, or that should thereafter be by law directed to be done and performed, etc. And by the second section of that act, the Commissioner, as chief officer, was required to appoint, with the approval of the Secretary of State, an inferior officer, to be called the chief clerk of the Patent Office; who, in all cases during the necessary absence of the Commissioner, or when the principal office should become vacant, should have the charge and custody of the seal, and all books, records, machines, etc., pertaining to the office, and should perform the duties of the Commissioner during such vacancy. The Commissioner was also authorized to. *580 appoint an examining clerk, and two other clerks. And in cases where parties were not satisfied with the decision of the Commissioner, made either as to the non-patentability of a claim, or as to the interference of an application with another application for a patent or with an unexpired patent, an appeal was allowed to a board of examiners, composed of three disinterested persons, who should be appointed for that purpose by the Secretary of State. Secs. 7 and 8. This mode of appeal continued until the act of March 3, 1839, which gave the party aggrieved the right of appeal to the chief justice of this District.
It was by the act of March 2, 1861 (12 Stat. at Large, 246), that provision was first made for the appointment of three examiners in chief, whose duty it was to revise and determine upon the validity of decisions made by examiners when adverse to the grant of letters patent, and also to revise and determine in like manner upon the validity of the decisions of examiners in interference cases, and, when required by the Commissioner, in applications for extension of patents, and to perform such other duties as might be assigned to them by the Commissioner; and from their decisions appeals might be taken to the Commissioner in person.
Up to the time of this last mentioned act, and for ten years thereafter, there had been no Assistant Commissioner authorized to be appointed. But the work of the Patent Office had so greatly increased; and the duties of the Commissioner had so multiplied, that it was found necessary, in the reorganization of the Patent Office, under the act of July 8,1870, passed to revise, consolidate and amend the statutes relating to patents and copyrights, to provide for a largely increased force to do the work of the office. By that act it was provided that there should be one Commissioner of Patents, one Assistant Commissioner, and three examiners in chief, to be appointed by the President, with the consent of the Senate; and provision was also made *581 for the appointment of a corps of examiners and clerks. By the 11th section of this latter act, it was provided, that in case of the death, resignation, absence or sickness of the Commissioner, his duties should devolve upon the Assistant Commissioner until a successor should be appointed or such absence or sickness should cease. This section, however, only provided under what conditions the Assistant might act as Commissioner, not simply as an assistant. But this section of the act-of 1870, seems to have been omitted from the Revised Statutes relating to patents, except as it has been embodied in section 178 of the Revised Statutes, under another title. This, however, is not material here. The provision for the appointment of an Assistant Commissioner has been retained in the Revised Statutes, though there were no specific duties prescribed for him, while the Commissioner was present and capable of acting himself.
This reference to the previous statutes upon the subject shows how various has been the distribution of powers to the many agencies provided by Congress for the performance of the work pertaining to the grant of patents and the Patent Office. In the present organization of that office or bureau, the Assistant Commissioner is next in rank to the Commissioner, in the classification of officials, and it is quite certain that it was not the intention of Congress that his office should, in any state of affairs, or whether the Commissioner be absent or not, be a mere sinecure, or that he should only act in the case of the death, resignation, or sickness of the Commissioner. It was perfectly competent to Congress to have provided for the appointment of two Commissioners, with coequal powers and duties; but instead of that it has provided for the appointment of an Assistant Commissioner; and that necessarily implies that he is to assist in the performance of those duties that devolve upon the Commissioner. He is not required to act conjointly with the Commissioner, for that would not answer the.purpose for which *582 Ms office was created. It is, as we tMnk, clear that it is only in the performance of those duties that pertain to the office of Commissioner, as distinguished from the duties imposed upon the other officials of the office, that, under existing law, the Assistant Commissioner can lawfully act. Whatever may have been supposed to be the extent of his powers and duties prior to July 11,1890 (and we do not for a moment intimate that he - was not competent to act prior to that date as he acted in the present instance), since that date there ought to be no question of his power and duty. For the purpose of making the matter clear, and removing all question as between himself and the Assistant, we find the Commissioner of Patents, in his annual report for the year ending December 31, 1889, asking Congress for legislation upon this subject. In his report he stated that, “The great increase in the business of the office has to such an extent increased the labors of its head that it is found necessary to have the Assistant discharge a portion of the daily duties which the law devolves upon the Commissioner in terms. There should either be a law defining the duties of the Assistant, or the Commissioner should be authorized to devolve any portion of his duties upon the Assistant, either by general order or by special designation.” 50 O. Gr. 707.
It was in compliance with this request of the Commissioner, that Congress, in the annual appropriation act for the fiscal year ending June 30, 1891, approved July 11, 1890, in connection with appropriation for the salary of the Assistant Commissioner, declared that he “shall perform such duties pertaining to the office of the Commissioner of Patents as may be assigned to him by the Commissioner.” This same provision appears in each subsequent annual appropriation act, and is the law still in force. Any duty, therefore, that pertains to the office of the Commissioner of Patents, whether of an appellate character or otherwise, *583 may be assigned by the Commissioner to be performed by the Assistant Commissioner.
But it is contended, that inasmuch as the appeal from the examiners in chief is to the Commissioner in person, therefore the duty of hearing and deciding such appeal is a special and exclusive one imposed upon the Commissioner, and which the Assistant can not be called upon to perform. We can not, however, agree to this contention. It must be borne in mind that this form of appeal to the Commissioner in person was prescribed by the act of 1861, when there was no Assistant Commissioner in existence, and when the state of the business in the Patent Office made it possible for the Commissioner to perform all the duties that pertained to his office in person. But it appears that that state of things has entirely changed by the great increase of the business of the office, and that the services of an Assistant are required for the prompt and expeditious discharge of the duties that pertain to the office of the Commissioner. The mere form in which the appeal is given ought not to exclude the service of the Assistant in hearing and disposing of the appeal. The appeal could not well have been given to the Commissioner and the Assistant, or to the Commissioner or the Assistant, in .the alternative. The hearing and deciding appeals is a duty pertaining to the. office of the Commissioner of Patents, and may, therefore, be assigned to be performed by the Assistant Commissioner.
It is urged in argument that such an assignment to duty is a delegation of judicial power that belongs to and can only be performed by the Commissioner in person. But we are not of that opinion. The whole matter rests within the power of Congress, and it was just as competent to invest the Assistant Commissioner with appellate power as it was to invest the Commissioner with such power. It was no more the delegation of judicial power than was the case of the appointment of arbitrators by the Secretary of State *584 under the act of 1793, or the appointment of the board of examiners of appeals by the Secretary of State under the act of 1836. In each case the source of the power was and is in Congress, and the method devised was only the means to accomplish the object in view. When the duty is assigned, the power to execute it is not derived from the Commissioner, but from the act of Congress authorizing such assignment of duty to the Assistant Commissioner. So soon as the duty is assigned to the Assistant, the act of Congress at once invests him with power and authority to perform it.
He does not perform it as the-act of the Commissioner, but as the act of the Assistant Commissioner. The practice of the Patent Office, we are informed, has been in conformity with this view for many years past; and unless such practice were shown to be plainly wrong and unfounded upon any reasonable construction of the statutes, the courts would not be justified in declaring the results of that practice nullities, with all the mischievous consequences that would likely follow.
We find nothing in the case to warrant the issue of the writ of mandamus, and the order appealed from must there-’ fore be affirmed; and it is so ordered. Order affirmed.